**TVT RECORDS and TVT Music, Inc., Plaintiffs,**

v.

**The ISLAND DEF JAM MUSIC GROUP and Lyor Cohen, Defendants.**

**No. 02 CIV. 6644.**

United States District Court, S.D. New York.

March 7, 2003.

James E. d'Auguste, Akin, Gump, Strauss, Hauer & Feld, L.L.P., James Philip Chou, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City, Peter L. Haviland, Rhonda R. Trotter, Akin Gump Strauss Hauer & Feld, LLP, Los Angeles, CA, for TVT Records, TVT Music, Inc., plaintiffs.

Michael T. Mervis, Proskauer, Rose, L.L.P., Mary Mulligan, Esq., Universal Music Group, Robert J. Eddington, Proskauer Rose LLP, New York City, for the Island Def Jam Music Group, Lyor Cohen, defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs TVT Records and TVT Music, Inc. (collectively "TVT") and defendants The Island Def Jam Music Group and Lyor Cohen ("Cohen," and collectively with The Island Def Jam Music Group, "IDJ") have filed various motions *in limine* dated February 28, 2003 addressing evidentiary issues anticipated to arise during the trial of their dispute, which is scheduled to commence on March 10, 2003. The Court has considered the parties respective arguments in support of and in response to these motions and, with limited exception, finds the arguments unpersuasive.

### I. DISCUSSION

As a preliminary matter, the Court notes that many of the *in limine* motions the parties have brought reflect inappropriate use of such motions. The purpose of *in limine* motions is to enable the Court to rule on disputes over the admissibility of discrete items of evidence. *See United States v. Chan*, 184 F.Supp.2d 337, 340 (S.D.N.Y.2002) ("The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."). Here, as demonstrated by the discussion below, the parties seek to employ their *in limine* motions as preemptive weapons with which they endeavor to strike in shotgun fashion at whole topics and sources of prospective evidence, out of context and before any specific objection against its proper backdrop is raised, that each side anticipates the other may contemplate introducing at some point during the course of the trial, or as dispositive means to fully obviate a trial altogether. Thus, in the guise of addressing limited evidentiary issues, the parties' motions *in limine* would effectively serve as a form of advance trial of substantive portions of the case, or indeed as a substitute for the trial itself. Insofar as these strategies and purposes

underlie the parties' motions, the Court deems them impermissible, and denies the relief requested, in part, on this basis.

## A. *TVT'S MOTION IN LIMINE TO EXCLUDE EXPERT REPORTS OF ELLIOT GOLDMAN DATED FEBRUARY 28, 2003*

■ TVT moves this Court for an order precluding the industry practices and damages reports and corresponding testimony proposed by Elliott Goldman ("Goldman") on behalf of IDJ. Goldman's initial report addressing industry practices will not be stricken because even though he may, based on TVT's representations in its supporting memorandum, have been retained to provide professional services to TVT in connection with an unrelated matter and may have had a confidential relationship with TVT at the time of that engagement, TVT does not assert that any information Goldman may have acquired in the course of those services formed the basis of the content of his report in this case. Rather, TVT merely invokes the possibility of such influence. TVT does assert that confidential information about TVT's business affairs was implicated by Goldman's followup report addressing damages. Nevertheless, TVT does not adequately explain what portions of this report may reflect improper reliance on confidential information from TVT, how the confidential information supplied by TVT may have been implicated, or even what information, precisely, was disclosed to Goldman. TVT merely asserts the existence of undue reliance on confidential information which TVT only generally describes as follows: "Mr. Goldman was advised of TVT's financial condition, business plans, distribution and publishing operations, and potential damages related to loss of a contractual relationship with Vagrant Records." (TVT's Motion *In Limine* To Exclude Expert Reports Of Elliot Goldman dated February 28, 2003 at 1.)

Furthermore, Goldman himself represents that, in authoring the reports submitted in connection with TVT's present dispute with IDJ, he did not rely on any information previously conveyed to him by TVT during their past relationship. (Declaration of Elliot Goldman dated March 4, 2003, ¶ 9.) For these reasons, TVT's motion *in limine* seeking to preclude Goldman's expert reports and testimony is denied.

## B. *TVT'S MOTION IN LIMINE AND SUPPORTING MEMORANDUM OF LAW TO EXCLUDE IRRELEVANT AND PREJUDICIAL EVIDENCE AND ARGUMENT, DATED FEBRUARY 28, 2003*

### 1. *Evidence Of TVT's Involvement In Collateral Legal Disputes*

■ TVT seeks an order precluding evidence of collateral legal disputes between itself and IDJ, as irrelevant and prejudicial to TVT and as improper character evidence. In the absence of context, the Court cannot categorically conclude that such evidence is not relevant to matters raised by the present dispute, nor can it properly weigh its probity. Evidence of disputes between TVT and IDJ or Steven Gottlieb ("Gottlieb") and Cohen may, for example, be relevant to issues of reliance, past business relationships and agreement. Accordingly, the Court will not preclude *in limine* evidence of such collateral legal disputes between TVT and IDJ or Gottlieb and Cohen and will, instead, rule on concrete objections made by TVT in due course. However, the Court will not allow the trial to digress into a mini-trial of TVT's record of other litigation, however extensive. Introduction of evidence for the specific purpose of portraying TVT as perpetually litigious will not be permitted,

insofar as such evidence may be irrelevant, unduly prejudicial and not probative and distracting to the jury.

In a similar vein, evidence of TVT's or Gottlieb's involvement in collateral legal disputes with parties *other than* IDJ or Cohen will not be permitted absent a conference in the jury's absence or at sidebar, demonstrating the relevant and probative value of the specific evidence. IDJ may, however, offer prior statements of Gottlieb or other TVT employees made in the course of such collateral litigation. Any objections to these statements based on relevance, prejudice, hearsay, and the like will be considered by the Court in due course at trial.

### 2. *Evidence Regarding TVT's Putative Violation of Rush Associated Labels's ("RAL") Rights*

■ TVT also seeks to preclude, as irrelevant and prejudicial, evidence suggesting that it previously had violated RAL's rights to the services of the artist professionally known as "Foxy Brown" in connection with a music video in which TVT's exclusive artist "Mic Geronimo" performed. The Court is unable to categorically conclude, absent context, that such evidence is not relevant to issues presented by the current litigation, nor can the Court assess the probative value of such evidence at this stage. Such evidence in a certain form, may, for example, be relevant to questions of reliance and agreement. Accordingly, the Court will rule on objections to such evidence made in due course at trial.

### 3. *Evidence Regarding Release Dates Of Other Music Albums*

■ TVT seeks to preclude as irrelevant and confusing evidence of the release dates of other music albums, which TVT expects IDJ will offer to inform the jury's deliberations regarding the relationship between the timing of a release and its market performance. This matter, however, is clearly relevant to the question of damages, and the Court does not recognize a potential for confusion that cannot be clarified in due course at trial. Accordingly, TVT's motion *in limine* for an order precluding the introduction of evidence concerning music album release dates is denied.

### C. *DEFENDANTS' NOTICE OF MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING A PURPORTED CRIMINAL INVESTIGATION OF M.I. RECORDS, LLC (D/B/A, "MURDER INC") AND/OR IRV GOTTI, AND OTHER, SIMILARLY SENSATIONALIST MEDIA REPORTS, DATED FEBRUARY 28, 2003*

■ IDJ seeks an order precluding, as irrelevant and prejudicial, evidence of: allegations that record companies, including IDJ, have inflated Soundscan figures; an alleged criminal investigation of M.I. Records or of any of its employees; and the shooting of Christopher Lorenzo. Beginning with Soundscan figures, the Court is unable in the absence of context to conclude categorically that such evidence is not relevant to matters presented by this case, nor can it assess its probity. For example, such evidence may have a bearing, as TVT argues, on the prospects that the CMC recording here at issue will ever be released, and if so, when, and consequently on damage calculations. Accordingly, the Court will deny this portion of IDJ's motion *in limine* and instead will rule on specific objections made by IDJ in due course at trial.

■ With respect to evidence of a putative criminal investigation and of the shooting referred to, the Court sees mini-

mal or no relevance of these events to the matters in dispute and recognizes the serious potential for prejudice to IDJ. Therefore, the Court will not permit such evidence absent prior ruling by the Court sought in proper context outside the presence of the jury or at sidebar.

## D. *DEFENDANTS' NOTICE OF MOTIONS IN LIMINE FOR ORDERS COMPELLING PLAINTIFFS TO ELECT A REMEDY AND PRECLUDING INADMISSIBLE EVIDENCE AND ARGUMENTS LIKELY TO BE OFFERED BY PLAINTIFFS DATED FEBRUARY 28, 2003*

### 1. *This Court's Prior Rulings*

■ The Court credits IDJ's concern that this Court's prior determinations in the context of a preliminary injunction hearing are likely to unduly influence the jury in its role as trier of fact. Furthermore, findings made in the context of a preliminary injunction application are not binding on a jury at trial. *See, e.g., Dorsey v. McQuillian,* No. 94 Civ. 3578, 1997 WL 772779, at *2 (S.D.N.Y. Dec. 15, 1997); *Poe v. Charlotte Mem'l Hosp., Inc.,* 374 F.Supp. 1302, 1312 (W.D.N.C.1974). Therefore, any such references offered for the purpose of establishing at trial a finding by this Court during the preliminary injunction hearing will not be permitted. Additionally, any references offered for any other purpose, given this attendant risk of undue influence, are not permitted absent prior rulings by the Court sought in proper context at sidebar or in the jury's absence.

### 2. *Tortious Interference And This Court's Preliminary Injunction*

■ IDJ next seeks an order precluding TVT, on grounds of relevance and prejudice, from arguing that IDJ "attempted to and/or would have succeeded in interfering with TVT's alleged contract with [Irv Gotti ("Gotti") and Ja Rule], but were prevented from doing so only by this Court's preliminary injunction." (Memorandum Of Law In Support Of Defendants' Motion *In Limine* To Preclude TVT From Arguing At Trial That Defendants Would Have Tortiously Interfered With TVT's Alleged Contract But For This Court's Order Enjoining Defendants' Conduct dated February 28, 2003 at 1). In arguing its position, IDJ presumes that "the alleged conduct underlying this argument [by TVT] at most consists of an *attempt* to tortiously interfere with TVT's alleged contract ...." [1] (*Id.* (emphasis in original).) The Court does not understand TVT to frame its tortious interference argument so narrowly, however, and recognizes that TVT will attempt to argue at trial that tortious interference was not merely attempted but in fact did occur. Therefore, this portion of IDJ's motion is denied.

### 3. *Motion To Compel TVT To Elect A Remedy*

■ IDJ seeks an order compelling TVT to choose between equitable and monetary relief and restrict its evidence on damages accordingly. IDJ argues that simultaneous pursuit of equitable and monetary relief is inconsistent with TVT's claims in its amended complaint. The Court disagrees. TVT may, for example, argue for equitable relief enjoining IDJ from interfering with a future release of

---

**1.** IDJ proceeds to argue that "[s]ince the conduct underlying this argument at most consists of only an attempt to tortiously interfere with the Heads of Agreement and there is no cognizable claim for attempted (but unsuccessful) tortious interference with contract, it is not relevant to any claim in this action." (*Id.* (citation omitted).)

the CMC Album as well as for damages for any losses it may have suffered resulting from the interim delay in the release of this album. Additionally, TVT asserts not only contract claims, which can be redressed in equity or in damages, but also tort claims in the form of fraud and tortious interference, for which redress generally takes the form of monetary damages.

■ Even where TVT does seek equitable relief in the form of specific performance, a simultaneous pursuit of monetary damages is permissible. In this vein, IDJ argues that

> [s]ince a claim for specific performance requires a showing that monetary damages would be unascertainable and inadequate, and a claim for a legal remedy would require a showing that the amount of monetary damages is reasonably ascertainable, the proof needed for each claim would be contradictory and mutually exclusive.

(Defendants' Memorandum Of Law In Support Of Their Motion *In Limine* To Compel Plaintiffs To Elect A Remedy, And To Preclude Evidence Concerning Alleged Monetary Damages That, As A Matter Of Law, Cannot Be Recovered In This Action dated February 28, 2003 at 2.) In fact, IDJ's conclusion of *mutual* exclusivity does not follow because its argument implausibly presumes TVT's success as to, and election of, both equitable and monetary damages simultaneously. If monetary damages are adequate and ascertainable, equitable relief may indeed be inappropriate; however, if TVT endeavors to show that monetary damages are inadequate in its pursuit of equitable relief but fails, then this failure necessarily establishes the propriety of monetary relief. Furthermore, to the extent necessary, an election between equitable and monetary relief can occur after a verdict is ren-

dered. *See Croce v. Kurnit,* 565 F.Supp. 884, 894 (S.D.N.Y.1982), *aff'd,* 737 F.2d 229, 230 (2nd Cir.1984) ("Election is to be made after trial.").

IDJ also claims that TVT is not entitled to both equitable and monetary damages on its contract claim because it inadequately pleads for monetary damages "in the alternative." The Court concludes that the Amended Complaint dated October 18, 2002 (the "Amended Complaint"), notably paragraphs 31–35 and 66(a)-(e), adequately expresses and notifies IDJ of TVT's allegations and claims for redress as required by Rule 8 of the Federal Rules of Civil Procedure, in spite of the absence of the specific language, "in the alternative." This conclusion follows particularly in light of the rules governing the availability of equitable versus monetary relief.

For these reasons, IDJ's argument that TVT cannot consistently argue for both equitable and monetary relief is rejected, and the portion of its motion *in limine* seeking an order compelling TVT to select between the two is denied.

### 4. *Gotti's Statements As Hearsay*

■ IDJ seeks an order precluding as hearsay all statements made to trial witnesses by Gotti. IDJ notes that TVT may offer testimony by its principal, Gottlieb, and its artist and repertoire executive, Bryan Leach, about conversations with Gotti in which Gotti described various statements made by Cohen and other IDJ representatives. IDJ argues that such testimony presents a layered hearsay problem, the first layer at the level of statements by IDJ and Cohen to Gotti and the second layer at the level of statements by Gotti to the witnesses who will be testifying at trial.

The Court recognizes that the hearsay rule applies to each layer of communica-

tion. Nonetheless, the Court will reserve judgment on this matter until presented with a live controversy, meaning until TVT actually attempts to introduce such statements at trial. At that point, the Court will be able to assess more precisely the nature of the statements proposed, whether they are offered for the truth of the matters asserted, and what exceptions to the hearsay rule, if any, may apply, particularly at the first layer of hearsay as described above. The Court recognizes that the admissibility of statements conveyed to trial witnesses through Gotti will likely further depend on the relationship between Gotti and IDJ, namely, whether that relationship was sufficiently close, or whether IDJ enjoyed sufficient control, so as to render Gotti an agent and his statements those of a party-opponent. The Court will make this determination if and when it becomes necessary at trial based on the information provided by the parties, including that contained in their supporting and responsive memoranda of law addressing IDJ's present motion *in limine.*

### 5. *Evidence Of Lost Profits*

■ IDJ challenges the report and testimony of TVT's expert, Bruce Kolbrenner ("Kolbrenner"), arguing that expert calculations of lost profits from projected sales of the CMC Album are too speculative and must be precluded on this ground. IDJ argues that claims of lost profits in the music industry context must be viewed skeptically as market performance is often difficult to predict. IDJ argues that such skepticism applies in particular to the CMC Album because this album is a "new business enterprise" given the minimal market exposure of CMC.

While the Court agrees that CMC's presence in the marketplace at this time is quite limited, that of Ja Rule is, as IDJ itself argues elsewhere, quite extensive.

Because Ja Rule is one of only three members of CMC, it is reasonable to rely, as Kolbrenner does, on Ja Rule's popularity and the performance of his solo albums as a basis to project CMC Album sales. Additionally, Gotti, who is principally involved in the production of the CMC Album, is a highly prominent and successful player in the marketplace, making reliance on the market performance of his past work reasonable as well. Similarly, Kolbrenner indicates in his report that he also relied on other urban album sales by TVT, the same record company which has endeavored to distribute the CMC Album. Under these circumstances, the Court does not find Kolbrenner's projections unduly speculative and unreliable as a matter of law.

IDJ also argues that Schedules G and I of Kolbrenner's report should be stricken because they inject an added layer of speculation. As to Schedule I, the Court agrees with IDJ that predicting the effect of the CMC Album's market performance on TVT's ability to sign new urban artists is too arbitrary and speculative to quantify based on the limited explanation of methodology Kolbrenner provides in his report. Accordingly, absent further clarification evincing adequate reliability, Schedule I must be stricken and testimony as to its contents is precluded.

Regarding Schedule G, Kolbrenner's projections presume that the CMC Album will be not only successful but of such a character as to draw licensing revenues from third parties for use in advertising, soundtracks, television, etc. In calculating this so-called "ancillary income," Kolbrenner relied on percentage multipliers of the overall sales projections. Kolbrenner indicates that these multipliers are industry standards used to determine ancillary income. Because Kolbrenner is an expert in the field, the Court will recognize this assertion and allow the jury to consider its

weight and credibility. Because the projections to which these percentage multipliers are applied to arrive at the ancillary income figure have already been sustained above, the Court will not preclude Kolbrenner's ancillary income projections as unduly speculative.

### 6. *Reliability of Kolbrenner's Report*

IDJ challenges the reliability of Kolbrenner's expert report and of Kolbrenner's qualifications as an expert. Specifically, IDJ argues that Kolbrenner's reliance in part on market performance of past Ja Rule albums to project sales and profit losses with regard to the CMC Album is unfounded; that references to lost publishing income should be stricken because TVT is not entitled to it; that TVT cannot rely on Kolbrenner's report in pursuit of monetary damages because TVT is also seeking to enforce its alleged agreement with IDJ; that Kolbrenner's reliance on losses from foreign sales is precluded by the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 101 *et seq.;* that Kolbrenner's accounting degree does not qualify him to render an opinion about the market performance of a music album; and that Kolbrenner's report and testimony fail the reliability and specialized knowledge requirements of *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Regarding IDJ's challenge to Kolbrenner's reliance on the sales performance of past Ja Rule albums as indicative of profit projections for the CMC Album, the Court has already made the threshold determination that such reliance is not unduly speculative. The persuasiveness of this comparison can therefore be addressed by IDJ through its own counter-presentations at trial, including by cross-examining Kolbrenner. The jury can then weigh Kol-

brenner's opinion accordingly. Therefore, this portion of IDJ's motion *in limine* is denied.

■■■ IDJ also challenges the portion of Kolbrenner's report addressing lost publishing income, arguing that TVT Music, Inc. is a non-party to the claims for which lost profits are applicable. In fact, the Amended Complaint identifies TVT Music, Inc. as "an affiliate" of TVT Records and delineates the shorthand term, "TVT" to refer to both entities. (Amended Complaint, ¶ 8.) The Amended Complaint then proceeds to assert each claim against IDJ and to pray for appropriate relief using this shorthand term. Accordingly, IDJ's assertion that TVT Music, Inc. is not a party to the claims for which lost profits are available is rejected.

Regarding IDJ's claim that TVT cannot pursue damages for losses incurred pursuant to a breach of contract for which it is also seeking relief in the form of specific performance, this argument echoes IDJ's argument that TVT must be compelled to elect between equitable and monetary relief, which the Court found unpersuasive for the reasons expressed in Section I.D.3 *supra.* For the same reasons, the Court will not credit that argument by IDJ in the present context to strike Kolbrenner's report.

■■■■ IDJ also argues that Schedule H of Kolbrenner's report presents damages calculations that rely in part on foreign sales of the "Irv Gotti Presents: The Inc." video and album, which allegedly include infringing material. IDJ argues that the Copyright Act does not contemplate recovery for infringement abroad. In fact, the Copyright Act's territorial restriction merely requires that harm from infringement occurring abroad follows a predicate act that occurred within the United States, in which case, the subsequent foreign distribution is actionable as a byproduct of

that predicate act. *See, e.g., Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 73 (2nd Cir.1988). Because the predicate infringement, as alleged by TVT, occurred within the United States, IDJ would be liable for any harm that TVT may have incurred abroad in consequence.

■ IDJ also argues that Kolbrenner's report and testimony should be precluded for failing to satisfy the reliability and specialized knowledge requirements of *Daubert.* Specifically, IDJ claims that Kolbrenner's status as a certified public accountant does not qualify him to present expert conclusions regarding the market performance of a music album. Kolbrenner's curriculum vitae, however, indicates extensive experience within the music and entertainment industry, (Declaration of Davis A. Picon dated February 28, 2003 at Ex. A), which, together with his accounting background, adequately qualifies him to make such projections of sales performance. IDJ also argues that Kolbrenner does not adequately explain the bases for his conclusions; however, the Court has already made the threshold determination that Kolbrenner is qualified to render his opinion as to sales projections and to rely on the market performance of other similar or related albums, including prior work by Ja Rule and Gotti. Additionally, Kolbrenner explains in his report that he relied on such additional data as Soundscan figures and album revenues, applicable recording contracts and attendant financial data, and profit allocations pursuant to the Heads of Agreement and Side Letter agreement.[2] (*Id.*) The Court finds Kolbrenner's explanations adequate to justify admission, and, therefore, IDJ's challenge

speaks more practically to the persuasiveness of his testimony which can be rebutted by IDJ's own presentations at trial, including cross-examination of Kolbrenner himself.

## II. CONCLUSION AND ORDER

For the reasons discussed above, and as specifically described in regards to each motion, it is hereby

**ORDERED** that TVT's motions *in limine* are GRANTED IN PART, DENIED IN PART; and it is finally

**ORDERED** that IDJ's motions *in limine* are GRANTED IN PART, DENIED IN PART.

**SO ORDERED.**

---

2. In Plaintiffs' Memorandum In Opposition To Defendants' Motion *In Limine* To Strike The Report Of Plaintiffs' Damages Expert, Bruce Kolbrenner dated March 5, 2003 at 2, TVT explains that Kolbrenner also relied on IDJ's offer "to relinquish an option on a Ja Rule/Irv Gotti album in exchange for the CMC Album" in determining the extent to which the market performance of past Ja Rule and Gotti albums relates to the projected performance of the CMC Album.