FILED
United States Court of Appeals
Tenth Circuit

December 15, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHERYL EMILY GRAVES and DON
GRAVES,

      Plaintiffs - Appellants,

v.

MAZDA MOTOR CORPORATION,

      Defendant - Appellee.

Nos. 10-6011, 10-6094
(D.C. No. 5:08-CV-00035-F)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **EBEL**, and **GORSUCH**, Circuit Judges.

---

In this products liability case, plaintiffs Cheryl and Don Graves ask us to

reverse the district court's grant of summary judgment in favor of Mazda Motor

Corporation. This we cannot do. The only evidence the Graves presented to

establish liability came from their proffered expert. The district court, however,

excluded that expert on *Daubert* grounds, and its decision to do so, we conclude,

did not amount to an abuse of discretion. So it is we must affirm.

---

[*] After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
order and judgment is not binding precedent except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

This case arises out of a trip Mrs. Graves took to Hattiesburg, Mississippi. Upon arriving at the Hattiesburg airport, she picked up her rental car — a Mazda6 with an automatic transmission. At the end of her stay in Mississippi and while en route to the airport to depart for home, Mrs. Graves got lost and pulled over at a private home to ask for directions. When exiting the car, Mrs. Graves left the engine running but thought she had placed the car's shifter in "park." As it turns out, the gear shifter was in "reverse" and, when she stepped out, the car rolled backwards, knocked her to the ground, and ran her over.

Bringing this diversity lawsuit, Mrs. Graves and her husband sought damages from Mazda for the injuries she suffered, alleging that the company's gear shifter was defectively designed. In support of their claim, the plaintiffs offered expert testimony from Stephen Syson, a human factors engineer. The district court, however, excluded Mr. Syson's testimony as unreliable and then, given the absence of any other probative evidence of liability and applying Mississippi's products liability law, granted summary judgment in favor of Mazda. As the prevailing party, Mazda later sought to recoup its taxable costs pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54. Ultimately, the district court awarded Mazda $8,737.98 — slightly over half of what the company had sought. On appeal, the plaintiffs seek to undo both the district court's summary judgment decision and its cost award.

We first consider the summary judgment question.  In their own approach to that question, the parties spend most of their time debating whether the district court should have applied Oklahoma's products liability law (as the plaintiffs contend) or Mississippi's (as the district court did and Mazda prefers).  But the only essential difference between the two laws is that the latter requires a products liability plaintiff to proffer a feasible alternative design to the purportedly defective one.  *Compare Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974) (requiring proof that product had a "defect" and that the defect made it "unreasonably dangerous" to the consumer)*, with* Miss. Code Ann. § 11-1-63 (requiring proof of an "unreasonably dangerous" defect and a "feasible design alternative that would have to a reasonable probability prevented the harm").  And that single elemental difference doesn't affect the outcome of this case.

That's because, as the district court noted, the plaintiffs' case founders on an element common to both Oklahoma and Mississippi law — one requiring any products liability plaintiff to identify an unreasonably dangerous design defect. *See Kirkland*, 521 P.2d at 1363; Miss. Code Ann. § 11-1-63.  To survive summary judgment under *either* state's law, then, Mr. and Mrs. Graves had to come forward with evidence from which a reasonable fact-finder could have concluded that Mazda's gear shift design was defective and unreasonably dangerous.  *See* Fed. R.

Civ. P. 56. The *only* evidence Mr. and Mrs. Graves proffered on this score came from Mr. Syson and, after the district court excluded that evidence, the plaintiffs were left without any evidence to stave off summary judgment. Thus, this appeal really hinges on the propriety of the district court's exclusion of Mr. Syson.

We review a district court's decision to admit or exclude expert testimony for abuse of discretion. *See United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999). Of necessity, this standard of review "implies [that] a degree of discretion [is] invested" in the district judge to issue a decision "based upon what is fair in the circumstances and guided by the rules and principles of law." *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (internal quotation omitted). Accordingly, we may reverse the district court only if its discretionary decision fell beyond the "bounds of the rationally available choices [before it] given the facts and the applicable law in the case at hand." *Id.* (internal quotation omitted).

The boundaries of the rationally available choices available to a district court in this field are well marked. Federal Rule of Evidence 702 indicates that a district court should allow an expert to testify if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. In assessing whether an expert's opinion is reliable enough to be admitted, a district court may consider whether

(1) the opinion at issue can be and has been tested, (2) the theory or technique has been subjected to peer review and publication, (3) there is a known or potential rate of error, and (4) the technique has general acceptance in the relevant discipline. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993). While these *Daubert* factors aren't meant as a one-size-fits-all test to be applied rotely to all experts, and while the district court enjoys much discretion in how it goes about assessing the reliability of an expert's proffered testimony, the central objective of the district court in any *Daubert* inquiry is and must be to ensure that any expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42, 152 (1999). Thus, to discharge its *Daubert* gatekeeping responsibility, the district court must take enough steps to confirm that it has "assess[ed] the reasoning and methodology underlying the expert's opinion," *Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)), and "determine[d] whether it is scientifically valid and applicable." *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

In ruling that the plaintiffs had failed to carry their burden of establishing Mr. Syson's reliability, the district court applied these principles in a sensible way, and one with which we entirely agree. As the district court noted, Mr.

Syson failed to provide any data or industry standard, or to conduct any testing, to confirm his view that Mazda's gear shift design was defective. Instead, Mr. Syson's proffered testimony merely *described* how the Mazda shifter works, pointed out the multiple "detents" between "drive" and "park," and noted that each detent is larger than the diameter of the shift lever. From this, Mr. Syson leaped directly to the conclusion that Mazda's design fails to allow for "smooth" shifting and so is defective and unreasonably dangerous. But without any reference to data suggesting how "smoothly" an ordinary consumer would expect a gear shift to move, without any confirming evidence indicating how Mazda's design might cause shifting troubles for ordinary drivers, without any reference to how engineering standards might have counseled against Mazda's gear shift design, and without any *other* evidence suggesting its reliability, the district court was right to exclude Mr. Syson's testimony. Admittedly, as the plaintiffs point out on appeal, Mr. Syson did provide a list of "safety systems analysis" techniques that, he contended, Mazda should have used in assessing its design. But even here, Mr. Syson failed to offer any evidence suggesting that Mazda actually failed to use these techniques. And he failed to present any evidence suggesting that these techniques, in any event, would have led Mazda to conclude that it needed to pursue a different gear shift design.

In the end, then, while the district court and we appreciate and recognize Mr. Syson's credentials and don't doubt the value someone in his field can bring

to defective design cases, the evidence he proffered in this case rests on no more than his say so — and that isn't good enough to require its admission. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence" based on only "the *ipse dixit* of the expert[,]" however well qualified he may be. *Kumho*, 526 U.S. at 157; *see also Milne*, 575 F.3d at 1134 (upholding exclusion of expert whose "conclusions about the safety precautions that should have been taken are . . . mere speculation" and explaining that "'[i]t is axiomatic that an expert, no matter how good his credentials is not permitted to speculate.'") (quoting *Goebel*, 215 F.3d at 1088).

To this, the plaintiffs reply by pointing to two district court opinions from outside this circuit. These decisions, the plaintiffs say, suggest that testimony from human factor engineers like Mr. Syson should be allowed without requiring any external evidence suggesting the reliability of their testimony. *See St. Pierre v. Maingot*, No. 1-2281, 2003 WL 25689900 (E.D. La. Apr. 7, 2003) (unpublished); *Michaels v. Mr. Heater, Inc.*, 411 F. Supp. 2d 992 (W.D. Wis. 2006). It is difficult to tell, however, what the basis of the expert's opinion was in the unpublished *St. Pierre* case, and in *Michaels* the expert appears to have referenced and relied on industry standards and methods, not just his own say so, to support his proffered opinions. *See Michaels*, 411 F. Supp. 2d at 999. In this way, *Michaels* illustrates that human factor engineering is a field in which theses like Mr. Syson's are susceptible to testing or can be based on industry standards

and methods, a point made by other authorities as well. *See, e.g.,* William D. Bliss, *Defective Product Design — Role of Human Factors*, 18 Am. Jur. Proof of Facts 2d 117, § 5 (noting that human factors engineers deal with "highly-specific, data-related questions" such as: "How far from the seated operator can a control switch be located and still be reached? How much seat adjustment must be provided so that both the fifth percentile operator and the ninety-fifth percentile operator can reach the operating controls?").

Besides, we are bound not by extra-circuit district court decisions but by our own precedent. And that precedent is clear and unequivocal that the *ipse dixit* of an expert, no matter how qualified he may be, is never enough to guarantee him a ticket to admissibility. Not only did we so hold in *Milne*, 575 F.3d at 1134, and *Goebel*, 215 F.3d at 1088, but we have so held for many years in many cases, *see e.g., Rodriguez-Felix*, 450 F.3d at 1125-26 (expert report insufficient to allow district court to "assess the reasoning and methodology underlying the expert's opinion," and "casual mention of a few scientific studies" was not enough) (internal quotation omitted); *Black v. M & W Gear Co.*, 269 F.3d 1220, 1237-38 (10th Cir. 2001) (district court properly "excluded the evidence because [the expert] had not based his conclusion on the results of tests or calculations specific to [the plaintiff's] accident").

Given that Mr. Syson's testimony was properly excluded and no other evidence suggesting that Mazda's design was defective, we affirm the district court's summary judgment disposition.

III

That leaves us only with the plaintiffs' challenge to the district court's cost award to Mazda of $8,737.98 pursuant to 28 U.S.C. § 1920. The plaintiffs charge that most of the depositions Mazda took, and the costs the company incurred in doing so, weren't necessary. But the district court found otherwise. And the district court possesses "broad discretion" in awarding costs which we will not disturb unless that court "(1) commits legal error, (2) relies on clearly erroneous factual findings, or (3) where no rational basis exists in the evidence to support its ruling." *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009).

No such reversible error exists here. The depositions in question were of individuals who spoke to Mrs. Graves's injuries immediately after the accident and the condition of the car before and after the accident. Ronnie Woullard, for example, was the owner of the home where Mrs. Graves's accident took place. Not only did he observe and talk to Mrs. Graves, Mr. Woullard also drove the Mazda6 back onto his driveway and thus could well have had relevant information regarding how the car operated and the presence of any defect. Similarly, the first five emergency responders were in a good position to observe

- 9 -

the immediate scene of the accident and Mrs. Graves's injuries. The two family members deposed, Linda Bland and DeAnna Brekke, were with Mrs. Graves forty-eight hours prior to the incident and spoke to her shortly afterward. As the district court concluded, it was eminently reasonable for Mazda to think this information necessary for trial, relevant both to the question of damages and whether the car was defective.

The plaintiffs' complaint about the district court's award of costs associated with the copying of DVDs and CDs given to experts and counsel fails for a similar reason. These items contained photographs of the scene, videos of the vehicle inspection, and other investigatory documents obviously pertinent, as the district court concluded, to the preparation for a trial. *See Williams*, 558 F.3d at 1149 (noting that "the burden of justifying copy costs is not a high one" (internal quotation omitted)). While the plaintiffs may be right that Mazda could have avoided making copies for its experts and counsel by, for example, uploading its digital files onto a centralized database, and while that method of distributing information may some day become mandatory, our case law has not yet prohibited prevailing parties from recovering costs incurred in employing more traditional methods of copying and distributing material information. *See id*. ("Nor do we think the fact documents are available in a central depository, as Plaintiffs allege here, inexorably leads to the conclusion that copies made for an

attorney's use were not reasonably necessary to the litigation of the case" (internal quotation omitted)).

The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge