Robert E. Blackburn, United States District Judge
The matter before me is defendants' Motion To Exclude Proposed Expert Testimony of Michael Geist [# 127],[1] filed March 23, 2018. I grant the motion in part and deny it in part.
I. JURISDICTION
I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 1132(e)(1) (action to enforce rights under ERISA).
II. STANDARD OF REVIEW
The instant motion implicates Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony. The rule provides, relevantly, that
[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
FED. R. EVID. 702. As interpreted by the Supreme Court, Rule 702 requires an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that the testimony will assist the trier in determining a fact in issue. Daubert v. Merrell Dow Pharmaceuticals, Inc. , 509 U.S. 579, 589-92, 113 S.Ct. 2786, 2795-96, 125 L.Ed.2d 469 (1993) ; Truck Insurance Exchange v. MagneTek, Inc. , 360 F.3d 1206, 1210 (10th Cir. 2004). The Supreme Court has described the court's role in weighing expert *1138 opinions against these standards as that of a "gatekeeper." See Kumho Tire Company, Ltd. v. Carmichael , 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999).
An expert may be qualified by "knowledge, skill, experience, training, or education" to offer an opinion on an issue relevant to the case. FED. R. EVID. 702(a). See also 103 Investors I, L.P. v. Square D Co. , 470 F.3d 985, 990 (10th Cir. 2006). An expert opinion is reliable when it is based on sufficient facts or data, employs a methodology generally deemed reliable in the expert's field, and properly applies such methods to the facts of the case. See FED. R. EVID. 702(b), (c), & (d) ; United States v. Crabbe , 556 F.Supp.2d 1217, 1222-23 (D. Colo. 2008).
Guided by these principles, the trial court has broad discretion in determining whether expert testimony is sufficiently reliable and relevant to be admissible. Truck Insurance Exchange , 360 F.3d at 1210 ; Smith v. Ingersoll-Rand Co. , 214 F.3d 1235, 1243 (10th Cir. 2000). The overarching purpose of the court's inquiry is "to make certain that the expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Goebel v. Denver and Rio Grand e Western Railroad Co. , 346 F.3d 987, 992 (10th Cir. 2003) (quoting Kumho Tire , 119 S.Ct. at 1176 ). Generally, "rejection of expert testimony is the exception rather than the rule." United States v. Nacchio , 519 F.3d 1140, 1154 (10th Cir. 2008), vacated in part on rehearing en banc , 555 F.3d 1234 (10th Cir. 2009). See also FED. R. EVID. 702 (2000 Advisory Comm. Notes). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert , 113 S.Ct. at 2798.
III. ANALYSIS
The facts of this case are well known to the parties and need not be repeated at length here. In this class action, plaintiffs claim defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq. , by, inter alia , allegedly paying excessive recordkeeping fees to Fidelity Management Trust Company ("Fidelity"), the designated recordkeeper and trustee for defendant Oracle Corporation's 401(k) plan ("the Plan"). To buttress that contention, plaintiffs proffer the expert opinion of Michael Geist, formerly with T. Rowe Price's Retirement Plan Services division, who presently runs his own consulting business specializing in the retirement plan, recordkeeping, and asset management industries. While employed by T. Rowe Price in a series of senior level roles over ten years, Mr. Geist purports to have gained experience with, inter alia , pricing and bidding proposals for recordkeeping services for large defined contribution plans. (See Def. Motion App. , Exh. B ¶¶ 5-10 at 6-9 & Exh. 2.)
Based on this experience, Mr. Geist opines defendants failed adequately and appropriately to monitor the compensation paid to Fidelity for its recordkeeping and administrative services and thus paid excessive fees during the class period. More specifically, he suggests a reasonable range of fees for such services during various years of the class period between $ 17 and $ 29 an hour. In addition, he concludes defendants' failure to put its recordkeeping services out to bid constitutes a breach of the Plan's fiduciary duties under ERISA. Defendants seek to exclude these opinions. While I agree as to Mr. Geist's opinion as to what constitutes a reasonable *1139 fee, I find the second, regarding whether the Plan breached its fiduciary duty, admissible within appropriate boundaries.
There is no question but that Mr. Geist possesses impressive credentials and extensive experience in a relevant field. It may be that he could provide cogent testimony which would inform the court's understanding of whether defendants breached their ERISA duties with regard to the per-participant fees paid to Fidelity. Nevertheless, his opinion in this regard falters because the relevant methodology by which he reached his conclusions remains undisclosed, making it impossible to conclude whether this opinion is reliable.
In its role as gatekeeper, the court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both ... valid and applicable to a particular set of facts." Dodge v. Cotter Corp . , 328 F.3d 1212, 1221 (10th Cir.), cert. denied , 540 U.S. 1003, 124 S.Ct. 533, 157 L.Ed.2d 408 (2003). Expert opinions must have "a traceable, analytical basis in objective fact." Bragdon v. Abbott , 524 U.S. 624, 653, 118 S.Ct. 2196, 2212, 141 L.Ed.2d 540 (1998). "The requirement that an opinion be derived from reliable principles or methods, known colloquially as 'methodology,' involves two related inquiries:"
(I) what methodology did the witness use to reach the opinion; and (ii) is that methodology generally deemed "reliable" in the field in which the expert works. Both inquiries are entirely factual in nature, and the proponent of the opinion must establish both inquiries by sufficient, competent evidence.
Crabbe , 556 F.Supp.2d at 1222.
Regarding the first of these inquiries, identifying the methodology the expert employed is not a particularly high bar. "Conceptually, determining the witness' methodology is as simple as asking ... how did the witness reach his or her opinion or conclusion?.... [I]t is simply an explanation of the process the witness used." Id. (internal quotation marks omitted). Yet Mr. Geist's opinion does not clear even this low hurdle because the facts on which it is based are wholly opaque. Thus, his opinion regarding what would have constituted a reasonable fee for such services at any particular point in time must be excluded.
Mr. Geist claims his opinion on this issue is premised on the experience and knowledge of the relevant industry he gained during his employment with T. Rowe Price. Yet "while experience may qualify an expert... credentials alone do not suffice" to establish that the expert's opinion has a reliable basis in fact. Ho v. Michelin North America, Inc. , 520 Fed. Appx. 658, 664 (10th Cir. 2013). "[E]xperience is not a methodology. Methodology is the process by which the expert relates his experience to the facts at hand in order to reach an expert opinion." Dean v. Thermwood Corp. , 2012 WL 90442 at *7 (N.D. Okla. Jan. 11, 2012) (emphasis added). Mr. Geist, however, has failed to disclose that process; indeed, he admits he has proffered no "model ... or a spreadsheet ... or an analysis ... where [a third party] could insert different data points and re-create [his] results." (Def. Motion App. , Exh. C at 470.)[2] During his deposition, Mr. Geist repeatedly claimed either that he did not recall specific facts or data supporting his opinions in this regard or that confidentiality agreements with T. Rowe Price prevented him from making such disclosures.
*1140 Yet his opinion as to what the Plan should have paid for Fidelity's services purportedly is based on this very evidence. This leaves the court at an impasse: while expert opinions must have "a traceable, analytical basis in objective fact," Bragdon , 118 S.Ct. at 2212, the court has no way adequately or accurately to assess whether Mr. Geist considered enough information to make his opinions reliable, as Rule 702(1) demands, see Cook v. Rockwell International Corp. , 580 F.Supp.2d 1071, 1085 (D. Colo. 2006) (noting this standard is quantitative rather than qualitative). Instead, and without any independent knowledge of what the evidence supporting Mr. Geist's opinions actually consists, the court (and ultimately the factfinder) is left simply to trust Mr. Geist's assurance that he in fact based his opinions on relevant, reliable, and sufficient evidence.
It would be an abuse of the discretion afforded me by Rule 702 to allow Mr. Geist to testify as to those opinions under such conditions. "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." General Electric Co. v. Joiner , 522 U.S. 136, 146, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997). See also Graves v. Mazda Motor Corp. , 405 Fed. Appx. 296, 300 (10th Cir. 2010) ("The law of this circuit likewise is that 'the ipse dixit of an expert, no matter how qualified he may be, is never enough to guarantee him a ticket to admissibility.' ") (citation omitted); Mooring Capital Fund, LLC v. Phoenix Cent., Inc. , 2009 WL 4263359 at *5 (W.D. Okla. Feb. 12, 2009) ("Whatever may have been the standard in the pre- Daubert era, it is clear that an expert's opinions are not admissible merely because the expert says, in effect, 'trust me, I know.' ... It does not suffice for him to simply invoke experience or judgment without more."), aff'd , 388 Fed. Appx. 814 (10th Cir. 2010), cert. denied , 562 U.S. 1289, 131 S.Ct. 1701, 179 L.Ed.2d 619 (2011) ; United States ex rel. Maxwell v. Kerr-McGee Chemical Worldwide, LLC , 2006 WL 2053534 at *7 (D. Colo. July 21, 2006) (expert would not be permitted to express opinion unless he "disclose[d] the basis and reasons therefor, [and] the data or other information he considered in forming that opinion") (citation and internal quotation marks omitted; second alteration in original).[3] These opinions therefore are properly excluded.
Plaintiffs' belated attempts to back-fill Mr. Geist's opinions do not convince me otherwise. In preparation for the filing of this not-unanticipated motion to strike Mr. Geist's opinions (see Def. Motion App. , Exh. A ¶¶ 4-6 at 1-2 & Exh. B), counsel for defendants conferred with plaintiffs' counsel, as required by D.C.COLO.LCivR 7.1(a) (id. , Exh. A ¶ 7 at 2-3). In response, plaintiffs' counsel suggested that "publicly available information, including Forms 5500 filed with the Department of Labor, confirms the reliability of [Mr. Geist's] opinions." (Id. , Exh. A-3 at 14.) In support, counsel forwarded a "summary spreadsheet" allegedly based on these forms which Mr. Geist purportedly used to refresh his recollection in an unrelated case and which counsel averred was "consistent with [Mr. Geist's] opinions in this case[.]" (Id. )
Conspicuously absent from this production and its provenance, however, is any *1141 indication that Mr. Geist actually relied on such information in arriving at his opinion in this case. More than that - Mr. Geist testified at his deposition that he disagreed with defendants' expert's opinion to the extent it relied on these same forms, characterizing such an approach "a completely unreliable way to determine what the recordkeeping fee for a particular plan is." (Id. , Exh. C at 320-321.) Under those circumstances, there was little reason - and certainly no compulsion - for defendants to accept plaintiffs' eleventh hour proffer to make Mr. Geist available for further deposition on this subject.[4]
For this same reason, whether other evidence in the record may be consistent with Mr. Geist's opinion is neither here nor there. Again, plaintiffs proffer neither argument nor evidence demonstrating Mr. Geist's actual reliance on any such evidence. Particularly unpersuasive is plaintiffs' suggestion that Mr. Geist's opinions are supported by the conclusions of defendants' expert. Even if Mr. Geist intended to rely wholesale on Mr. Gissiner's opinions - and there has been no evidence or argument that he has done or would do so - it would not be proper for him to do so without first establishing that those opinions themselves are reliable. See In re TMI Litigation , 193 F.3d 613, 715-16 (3rd Cir. 1999), as amended , 199 F.3d 158 (3rd Cir. 2000), cert. denied , 120 S.Ct. 2238 (2000); TK-7 Corp. v. Estate of Barbouti , 993 F.2d 722, 732-33 (10th Cir. 1993) ; Mooring Capital Fund, LLC , 2009 WL 4263359 at *5. Any putative correlation between Mr. Geist's opinions and any other opinion or evidence is simply irrelevant. Accordingly, these opinions will be excluded.
Defendants object further to Mr. Geist's opinion that the Plan did not act as a prudent fiduciary by failing to put the Plan's recordkeeping services out for competitive bids at regular intervals. Defendants maintain these opinions would usurp the court's prerogative to set forth the law applicable to the facts presented at trial. See Specht v. Jensen , 853 F.2d 805, 808 (10th Cir. 1988) (en banc), cert. denied , 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989). "[W]hen the purpose of the testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed." Id. at 810. See also Anderson v. Suiters , 499 F.3d 1228, 1237 (10th Cir. 2007) ("[T]estimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored."). Thus, the line between admissible and inadmissible testimony under Specht is this:
an expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case.
Specht , 853 F.2d at 809-10. See also United States v. Bedford , 536 F.3d 1148, 1158 (10th Cir. 2008) (expert "may not state *1142 legal conclusions drawn by applying the law to the facts") (citation and internal quotation marks omitted), cert. denied , 555 U.S. 1191, 129 S.Ct. 1359, 173 L.Ed.2d 620 (2009) ; Anderson v. Suiters , 499 F.3d 1228, 1237 (10th Cir. 2007) ("[W]hile expert witnesses may testify as to the ultimate matter at issue ... this refers to testimony on ultimate facts: testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored.").
In his expert report, Mr. Geist opines the Plan did not act as a prudent fiduciary because it failed to bid out the contract for recordkeeping services at regular intervals. (Def. Motion App. , Exh. C. ¶¶ 59-69 at 19-28, ¶¶ 122-123 at 45-46.) Mr. Geist states that this opinion is based, in part, on the standard of care set forth in ERISA. (Def. Motion App. , Exh. C ¶¶ 50-51 & nn. 4 & 5 at 21 (citing 29 U.S.C. §§ 1104(a)(1)(A) & 1104 (a)(1)(B) ).) To such extent, Mr. Geist's opinions are impermissible legal conclusions and must be excluded. Such opinions purport to define the meaning of "prudence" under ERISA, see George v. Kraft Foods Global, Inc. , 800 F.Supp.2d 928, 932 (N.D. Ill. 2011), but the question whether a fiduciary has acted prudently under ERISA is informed by legal precepts and precedents to which Mr. Geist may not testify, MCC Management of Naples, Inc. v. International Bancshares Corp. , 468 Fed. Appx. 816, 821 (10th Cir. 2012) ("The expert can refer to the law in expressing his opinion, but he may not tell the jury what legal standards must guide their verdict") (italics in original). Nor may he attempt to apply those standards to the facts of this case. See United States v. Arutunoff , 1 F.3d 1112, 1118 (10th Cir.), cert. denied , 510 U.S. 1017, 114 S.Ct. 616, 126 L.Ed.2d 580 (1993).
Moreover, there is nothing in the record to substantiate a conclusion that Mr. Geist is familiar with those legal precepts and precedents. Mr. Geist defines his relevant field of expertise as being in the areas of "revenue sharing, retirement plan pricing structures, recordkeeping fees, and recordkeeping fee equalization solutions as well as comprehensive business process optimization and governance in the sales, service, marketing, and finance functions of the distribution of asset management services through retirement plans." (Def. Motion App. , Exh. B ¶ 4 at 5.) Nothing in that recitation necessarily or obviously evinces any special familiarity with how ERISA is interpreted or applied, either generally or in context. Because his qualifications to offer such an opinion have not been adequately established, they are properly excluded.
Nevertheless, Mr. Geist avers also that his testimony as to the "best practices a prudent fiduciary would follow in establishing, monitoring and overseeing the recordkeeping and administrative fees charged to a 401(k) plan" is based in part on his experience in the industry. (Def. Motion App. , Exh. C ¶ 52 at 17-18.) To the extent his opinions regarding prudent practices are based on his familiarity with industry standards and practices, those opinions do not offend the rule of Sprecht and are admissible.[5] This distinction is more than merely semantic. An opinion that defendants breached their duties under ERISA leaves no room for the factfinder to do its job but essentially directs judgment in plaintiffs' favor. By contrast, testimony that defendants' actions were not prudent by the standards of the industry and in the more prosaic usage of that term allows room for argument and proof *1143 that the duty of prudence under ERISA may be informed by other considerations.[6]
Nor can there be any doubt that Mr. Geist is qualified to offer such opinions. Defendants challenge Mr. Geist's qualifications because his experience is as a vendor of retirement plan recordkeeping services, not as a plan fiduciary or advisor to a plan fiduciary. This argument construes the permissible bounds of the relevant inquiry too narrowly. Although an expert's qualifications must be specific to the topic as to which he would offer testimony, see Lippe v. Howard , 287 F.Supp.3d 1271, 1279 (W.D. Okla. 2018), "[a]s long as an expert stays within the reasonable confines of his subject area, our case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight," Ralston v. Smith & Nephew Richards, Inc. , 275 F.3d 965, 970 (10th Cir. 2001) (citation and internal quotation marks omitted).
As plaintiffs suggest and Mr. Geist's expert report adequately substantiates, his professional experience has afforded him "direct knowledge regarding the manner in which plan fiduciaries conduct a competitive bidding process to obtain the lowest fees for the desired level of recordkeeping and administrative services." (Plf. Resp. at 14.)[7] As to these specific matters, therefore, he is sufficiently qualified to testify as to what fiduciaries in the industry consider prudent conduct in such circumstances. Defendants are certainly free to point out any perceived deficiencies in Mr. Geist's bona fides to the finder of fact, but those matters go only to the weight, not the admissibility, of his testimony.
Lastly, defendants object to the factual narrative included in Mr. Geist's report (see Def. Motion App. , Exh. B § VIII, ¶¶ 81-121 at 34-45), which they assert is based on a biased review and recitation of the discovery in this case, resulting in unfounded evidentiary conclusions. This argument is woefully under-developed and non-specific, and I would reject it on that basis alone. See American Family Mutual Insurance Co. v. T AMKO Building Products, Inc. , 178 F.Supp.3d 1121, 1127 (D. Colo. 2016).
Yet even considered on such substance as there is, the argument fails. Defendants' suggestion that the discovery materials are "self-evident" and thus need no expert to interpret them is itself not self-evident.[8] Unlike the issues addressed in Perry v. TRW Electronics Products, Inc. , 1991 WL 125161 (10th Cir. July 9, 1991), cited by defendants in support of this proposition, the average person is undoubtedly largely unfamiliar with the particulars of how large defined contribution plans choose or change plan administrators.[9] Cf.
*1144 Perry , 1991 WL 125161 at *2 (expert testimony unnecessary to assist jury in comparing relative qualifications of employees for job position in age discrimination case). Expert testimony therefore is not self-evidently unhelpful to an understanding of those matters. To the extent defendants believe Mr. Geist's narrative is based on an incomplete and skewed interpretation of the evidence, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the appropriate means for pointing out such flaws. Daubert , 113 S.Ct. at 2798.
THEREFORE, IT IS ORDERED that defendants' Motion To Exclude Proposed Expert Testimony of Michael Geist [# 127], filed March 23, 2018, is granted in part and denied in part, as follows:
1. That the motion is granted insofar as it is directed to Mr. Geist's opinions as to what constitutes a putatively reasonable per-participant recordkeeping fee for administrative services of the type rendered by Fidelity to the Plan in this case;
2. That the motion is granted also insofar as it is directed to Mr. Geist's opinions as to whether defendants acted as a prudent fiduciary under ERISA by failing to put the Plan's administrative services out for bid;
3. That the motion is denied insofar as it challenges Mr. Geist's opinions as to whether defendants acted prudently by the standards of the industry in failing to put the Plan's administrative services out for bid; and
4. That the motion is denied insofar as it is directed to Mr. Geist's factual summaries.

"[# 127]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

Moreover, Mr. Geist disclaimed any reliance on any model he used to price plans while at T. Rowe Price. (Def. Motion App. , Exh. C at 219-224.)

The existence vel non of any confidentiality agreement Mr. Geist may have with his former employer does not change the analysis in this regard. See Maxwell , 2006 WL 2053534 at *7 ; In re Leap Wireless International, Inc. , 301 B.R. 80, 84-85 (Bkrtcy. S.D. Cal. 2003) ; TVT Records v. Island Def Jam Music Group , 250 F.Supp.2d 341, 345 (S.D.N.Y. 2003).

For this same reason, I am neither required nor inclined to concede to plaintiffs' suggestion to put off resolving the issues raised by this motion to the time of trial. Plaintiff's opposition to defendants' summary judgment motion relies in part on the very opinions challenged here. It would be profligate - and not in keeping with the mandate of Rule 1 of the Federal Rules of Civil Procedure to secure the "just, speedy, and inexpensive" resolution of this action, which presently is not set for trial and already has been pending for more than three years - to put the parties and the court to the expense and effort of a trial based on evidence which plaintiffs have failed to show is admissible.

Whether they are relevant is an issue I leave for resolution of the pending summary judgment motion.

The parties present nothing suggesting industry standards are coextensive with ERISA standards on these issues. See Beede v. Stiefel Laboratories., Inc. , 2016 WL 916418 at *24 (N.D.N.Y. Mar. 7, 2016) ; Hamilton v. American Corrective Counseling Services, Inc. , 2006 WL 2873622 at *2 (N.D. Ind. Oct. 4, 2006).

That Mr. Geist purportedly has received "fiduciary training" (Plf. Resp. at 15) is less compelling, especially in light of the highly non-specific and vague description of the content, timing, or any other particulars of that training (see Def. Motion App. , Exh. C at 374-375).

Indeed, if this were true, it seems odd that defendants also would have employed an expert to offer a contrary opinion.

Defendants' citation to United States v. Hill , 749 F.3d 1250 (10th Cir. 2014) is also inapposite. The court there considered and reaffirmed the prohibition on expert testimony which simply vouches for the credibility of other witnesses. Id. at 1260-61. The determination of credibility is the "exclusive function of the jury" to which the incomplete quotation cited in defendants' brief refers.